UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVUAN JORDAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 22 C 725 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| ILLINOIS STATE TROOPER | ) |
| E. BONANO (#6930) | ) |
| & C. SMITH-JOE (#6824), | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Illinois State Troopers E. Bonano and C. Smith (collectively, the "Troopers") arrested Plaintiff Davuan Jordan for aggravated unlawful use of a weapon in violation of 720 Ill. Comp. Stat. 5.0/24-1.6. After a judge dismissed the charges against him, Jordan filed this civil rights suit against the Troopers pursuant to 42 U.S.C. § 1983, alleging unreasonable seizure against Bonano (Count I), false arrest (Count II), and conspiracy (Count III). Jordan also brings two claims under Illinois state law: intentional infliction of emotional distress ("IIED") (Count IV) and malicious prosecution (Count V). The Troopers have moved to dismiss all counts. Because Jordan has sufficiently alleged that the Troopers lacked reasonable suspicion and probable cause to seize and subsequently arrest him (Counts I and II), and because the Court cannot conclude at this stage that the Troopers are shielded by either qualified or sovereign immunity (Counts III–V), the Court denies the Troopers' motion to dismiss.

## BACKGROUND[1]

On August 22, 2021, Jordan traveled from his home in Indiana through Illinois, planning to drive to Wisconsin. While on I-88, Trooper Bonano stopped Jordan's car. Jordan had not committed any traffic violations. Jordan informed Bonano that he had a weapon in the car, at which point Bonano ordered Jordan out of the car and secured the weapon. Jordan provided Bonano with his valid Indiana Identification Card ("ID Card") and Indiana Conceal Carry License ("CCL"). He also informed Bonano that he was traveling from Indiana to Wisconsin. Trooper Smith-Joe eventually arrived on scene to assist Bonano and the Troopers arrested Jordan for aggravated unlawful use of a weapon in violation of 720 Ill. Comp. Stat. 5.0/24-1.6.

Prosecutors ultimately indicted Jordan. The Troopers failed to inform the prosecutors that Jordan complied with Illinois law when he possessed a firearm along with a valid Indiana CCL. Bonano falsely testified that Jordan did not possess a CCL that allowed him to carry a firearm. On November 1, 2021, Jordan moved to dismiss the criminal indictment. On December 6, 2021, the trial court granted Jordan's motion.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to

---

[1] The Court takes the facts in the background section from Jordan's complaint and presumes them to be true for the purpose of resolving the motions to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

2

the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Unlawful Seizure (Count I)

The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, protects against unreasonable searches and seizures. U.S. Const. amend. IV. A brief detention to investigate a traffic violation constitutes a seizure under the Fourth Amendment and therefore, the detention must be reasonable. *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *United States v. Wilbourn*, 799 F.3d 900, 908 (7th Cir. 2015). "If an officer reasonably thinks he sees a driver commit a traffic violation, that is sufficient grounds to pull him over without offending the Constitution." *United States v. Lewis*, 920 F. 3d 483, 489 (7th Cir. 2019) (citation omitted).

Here, Jordan alleges that he "had not committed any traffic violations" that would support the Troopers pulling him over. Doc. 1 ¶ 8. The Troopers, however, argue that Jordan's allegations are conclusory and speculative, particularly in light of the traffic citations that the Troopers issued to Jordan. The Troopers assert that these traffic citations, attached as an exhibit to their motion, demonstrate that they had a valid reason to stop Jordan. Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may take notice of public records, *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997). But while the Court can take judicial notice of the existence of the

3

traffic citations, the Court will not consider the *content* of the traffic citations given Jordan's allegations calling their accuracy into question. *See Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018) ("Although a court may generally take judicial notice of public records, under Federal Rule of Evidence 201, a court may judicially notice only a fact that is not subject to reasonable dispute."); *cf. Lietzow v. Vill. of Huntley*, No. 17 C 5291, 2018 WL 6248911, at *2 (N.D. Ill. Nov. 29, 2018) ("But while the Court may recognize a prior judicial act, it cannot rely on the facts in a court record for the truth of the matter asserted. . . . This is especially so when the findings of fact directly contradict the facts asserted in [plaintiff's complaint.]" (citation omitted) (internal quotation marks omitted)). Jordan has alleged that he did "not commit[] any traffic violations" prior to the traffic stop. Doc. 1 ¶ 8. The Court accepts this allegation as true, as it must, *see Kubiak*, 810 F.3d at 480–81, and will not resolve a factual dispute in the Troopers' favor or make a credibility determination on a motion to dismiss. *See Tobey*, 890 F.3d at 641 (resolving conflicts in the plaintiff's favor); *see also Chriswell v. Vill. of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *1 (N.D. Ill. Nov. 4, 2013) (unreasonable seizure claim survived motion to dismiss because "claim involve[d] a fact dispute and credibility determination that [could not] be made on a motion pursuant to 12(b)"), *aff'd sub nom. Chriswell v. O'Brien*, 570 F. App'x 617 (7th Cir. 2014).

The Troopers also assert that Jordan failed to allege sufficient details surrounding his treatment of the citations—for example, whether he pleaded guilty or whether the citations were invalidated. In support of their argument, the Troopers rely heavily on *Chriswell*, 2013 WL 5903417, and *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* bars a plaintiff from pursuing a civil rights claim where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. But *Heck* "define[s] an affirmative

4

defense," *James v. Pfister*, 708 F. App'x. 876, 878–79 (7th Cir. 2017), that will only serve as grounds for dismissal if a complaint clearly forecloses relief, *Johnson v. Vanzant*, No. 3:21-CV-39-MAB, 2021 WL 4864323, at *2 (S.D. Ill. Oct. 19, 2021) (citing *James*, 708 F. App'x. at 878–79) (allowing plaintiff's § 1983 claim to proceed because it was "not apparent from the face of the complaint that [p]laintiff's claim [was] *Heck*-barred"). As the Troopers point out, the *Chriswell* court—relying on *Heck*—dismissed one of the plaintiff's unreasonable seizure claims based on a traffic stop where the plaintiff admitted that she paid the resulting traffic ticket, thereby indicating her guilt. 2013 WL 5903417, at *6. But the court expressly distinguished that claim from one that survived the defendants' motion to dismiss:

> Chriswell's assertion that "there was no legal cause" to stop her borders on conclusory, but it is a plausible inference from the facts she alleges (assuming they are true) that she had not committed any violation at the time Officer O'Brien pulled her over. While the defendants may eventually be able to prove that Chriswell pled guilty to and paid her ticket for her failure to wear a seatbelt or another violation that would trigger the *Heck* bar, they have not at this point identified any such evidence that the Court can presently consider. Unless and until they do, this claim involves a fact dispute and credibility determination that cannot be made on a motion pursuant to Rule 12(b).

*Id.* at *7. Here, Jordan plausibly alleges that he had not committed any traffic violations before the Troopers pulled him over and the complaint includes no allegations as to the resolution of the traffic citations. *See Johnson*, 2021 WL 4864323, at *2 ("[L]ike other affirmative defenses, [p]laintiff was not required to anticipate and preemptively plead around the *Heck* bar."). The Troopers may be able to demonstrate that they had reasonable suspicion to stop Jordan on a more complete record, but at this stage, Jordan's allegations allow his unlawful seizure claim to proceed.

5

## II. False Arrest (Count II)

The Troopers move to dismiss Jordan's false arrest claim on the basis that he has not properly alleged that they lacked probable cause to arrest him for aggravated unlawful use of a weapon in violation of 720 Ill. Comp. Stat. 5.0/24-1.6. The existence of probable cause bars a false arrest claim. *See Stokes v. Bd. of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010). "A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief" that the individual has committed or is about to commit a crime. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). Though a police officer need not engage in further investigation once he has established probable cause, he "cannot consciously disregard information that would bring clarity to a confusing situation." *Dean v. City of Chicago*, 896 F. Supp. 2d 699, 704 (N.D. Ill. 2012) (quoting *Mahnke v. Garrigan*, 428 F. App'x 630, 635 (7th Cir. 2011)).

To evaluate probable cause, the Court makes an objective examination of the facts and determines what conclusions an arresting officer might have reasonably drawn from those facts. *Holmes*, 511 F.3d at 679. Probable cause "requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (citation omitted) (internal quotation marks omitted).

720 Ill. Comp. Stat. 5.0/24-1.6 makes it an offense to, among other things, knowingly carry or possess a firearm in any vehicle upon public lands where the firearm is uncased, loaded, and immediately accessible and the person possessing the firearm has not been issued a currently valid license under the Illinois Firearm Concealed Carry Act. 720 Ill. Comp. Stat. 5.0/24-

1.6(a)(3)(A-5).² The Illinois Firearm Concealed Carry Act in turn permits a non-resident to transport a firearm within their vehicle in Illinois so long as the firearm remains in the vehicle, they have a valid CCL from their resident state, and they are not prohibited from carrying a firearm under federal law. 430 Ill. Comp. Stat. 66/40(e).

The Troopers argue that Jordan's complaint establishes that they had probable cause to arrest him because he admits to traveling on I-88 with a gun in his vehicle and does not allege that he had a valid Illinois CCL. The Troopers also point to the traffic citations that they issued to Jordan, which purport to demonstrate that Jordan presented as an Illinois resident. As explained *supra*, while the Court may take notice of public records, *Gen. Elec. Capital Corp.*, 128 F.3d at 1080–81, it will not take notice of facts that are subject to dispute, *Tobey*, 890 F.3d at 647–48. Here, because Jordan has alleged that the Troopers knew he was traveling from Indiana to Wisconsin, was not a resident of Illinois, and possessed a valid CCL from his state of residence (Indiana), *see* Doc. 1 ¶ 12–15, 18, at this stage, the Court will not consider Illinois to be Jordan's residence merely because the traffic citations suggest as much.

The Troopers may ultimately be able to demonstrate that they had probable cause because Jordan "did not present . . . as an Indiana resident." Doc. 10-1 at 6. But for now, the Court must accept Jordan's allegations that the Troopers knew he was a non-resident of Illinois; that he possessed a valid CCL from Indiana, his state of residence; and that he was traveling from Indiana to Wisconsin. Doc 1. ¶ 12–15, 18. These facts, taken as true, suggest that he complied with 430 Ill. Comp. Stat. 66/40(e). Thus, Jordan has plausibly alleged facts that

---

² The briefing does not make clear which section or sections of the Illinois statute Jordan allegedly violated. The complaint references 720 Ill. Comp. Stat. 5.0/24-1.6-A-2. Doc. 1 ¶ 16. The Troopers' memorandum in support of their motion lays out 720 Ill. Comp. Stat. 5.0/24-1.6(a)(1), (a)(2), (a)(3)(A) and (a)(3)(A-5). Doc. 10-1 at 5–6. The Court considers probable cause in light of the parties' arguments, which focus on the presence of a firearm and whether Jordan had a valid CCL.

suggest the Troopers "consciously disregard[ed] information" that would have clarified the situation and negated probable cause—specifically, Jordan's Indiana ID Card and CCL. *See Dean*, 896 F. Supp. 2d at 704 (denying defendant's motion for summary judgment where "a reasonable jury could conclude . . . [that defendant] . . . clos[ed] his eyes to readily available information that would negate probable cause" (internal quotation marks omitted)). "[T]he highly fact-based nature of these arguments is more amenable to resolution at a later stage after discovery has allowed for a clearer picture of the events." *Romando v. City of Naperville*, No. 20 C 2701, 2021 WL 1853304, at *3 (N.D. Ill. May 10, 2021) (finding it "too early to determine the issue" of probable cause, despite the defendants' "well-reasoned arguments[,]" where plaintiff alleged that she did not commit any of the alleged crimes or acts). Therefore, Jordan's false arrest claim survives the Troopers' motion.

### III. Conspiracy (Count III)

Jordan also claims that the Troopers conspired to violate his constitutional rights. To support conspiracy liability under 42 U.S.C. § 1983, Jordan must allege "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). The Troopers do not challenge the sufficiency of Jordan's conspiracy claim; rather, they argue that qualified immunity bars the claim because caselaw does not clearly establish whether the intracorporate conspiracy doctrine applies to § 1983 conspiracy claims.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "In other words, qualified immunity shields from liability police officers who act in ways they

8

reasonably believe to be lawful." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (quoting *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008)) (internal quotation marks omitted). At this stage, to overcome an assertion of qualified immunity, Jordan must allege a violation of a statutory or constitutional right that was clearly established at the time of the violation so that a reasonable officer would have known of the unlawfulness of his conduct. *Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020).

The Troopers focus on the applicability of the intracorporate conspiracy doctrine to Jordan's conspiracy claim. The intracorporate conspiracy doctrine, derived from corporate and antitrust settings, provides that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867 (2017). The Seventh Circuit has extended the intracorporate conspiracy doctrine to claims under § 1985. *See Wright v. Ill. Dep't of Child. & Fam. Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994); *Travis v. Gary Cmty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990). And the Sixth Circuit has concluded that the rationale for applying the doctrine to § 1985 applies equally to § 1983 conspiracy claims. *Jackson v. City of Cleveland*, 925 F.3d 793, 819 (6th Cir. 2019). As the Troopers acknowledge, however, the Seventh Circuit has not held that the intracorporate conspiracy doctrine bars § 1983 claims against police officers who conspire to violate an individual's constitutional rights. In an unpublished opinion discussing a § 1983 conspiracy claim, the Seventh Circuit stated in dicta that "a conspiracy claim has no role to play" where all the defendants are public employees, relying on caselaw under § 1985(3). *Scott v. City of Chicago*, 619 F. App'x 548 (Mem) (7th Cir. 2015).

Courts in this district are split as to the doctrine's applicability in police misconduct cases. *See Salaita v. Kennedy*, 118 F. Supp. 3d 1068, 1085 (N.D. Ill. 2015) (comparing cases

9

addressing the doctrine's application to § 1983 claims). *Compare Liggins v. City of Chicago*, No. 1:20-CV-04085, 2021 WL 2894167, at *5 (N.D. Ill. July 9, 2021) (collecting cases to demonstrate that "district courts have overwhelmingly declined to dismiss conspiracy claims against police officers pursuant to the intracorporate conspiracy doctrine"), *Haliw v. City of S. Elgin*, No. 19 C 01515, 2020 WL 1304697, at *4 (N.D. Ill. Mar. 18, 2020) ("There is reason to doubt, however, that this corporate-based and antitrust-based doctrine should apply to civil-rights conspiracy claims under § 1983."), *and Piercy v. Warkins*, No. 14 CV 7398, 2017 WL 1477959, at *19–20 (N.D. Ill. Apr. 25, 2017) (collecting cases that did not apply the intracorporate conspiracy doctrine to § 1983 conspiracy claims), *with Strauss v. City of Chicago*, 346 F. Supp. 3d 1193, 1210 & n.6 (N.D. Ill. 2018) (collecting cases and applying doctrine to § 1983 conspiracy claim). The Troopers argue that this shows that the law is not clearly established on the issue of whether police officers can conspire amongst themselves, meaning that qualified immunity bars Jordan's claim. *See Haliw*, 2020 WL 1304697, at *4 ("Liability is not clearly established for conspiracies amongst police officers of a single municipality because the law is unsettled on whether the intracorporate conspiracy doctrine applies to § 1983 claims.").[3]

The Court need not consider whether the intracorporate conspiracy can ever apply in a § 1983 action because it does not apply here on the facts alleged. The intracorporate conspiracy doctrine "applies only when the agents of a corporation or government entity act within the scope of their employment in joint pursuit of the entity's *lawful* business." *Gray v. City of Chicago*, No. 18 C 2624, 2022 WL 910601, at *14 (N.D. Ill. Mar. 29, 2022) (citation omitted); *Harris v. City of Chicago*, No. 20 CV 4521, 2020 WL 7059445, at *5 (N.D. Ill. Dec. 2, 2020)

---

[3] The *Haliw* court raised the qualified immunity implications of the intracorporate conspiracy doctrine *sua sponte* and so did not have the benefit of adversarial presentation in reaching its conclusion. 2020 WL 1304697, at *5.

(similar).  Here, the doctrine does not apply because the alleged illegal conduct—including falsely arresting Jordan—is "not the product of routine police department decision-making." *Salaita*, 118 F. Supp. 3d at 1085 (quoting *Newsome v. James*, No. 96 C 7680, 2000 WL 528475, at *15 (N.D. Ill. Apr. 26, 2000)); *see also Ochoa v. Lopez*, No. 20-CV-02977, 2021 WL 4439426, at *9 (N.D. Ill. Sept. 28, 2021) (holding that the intracorporate conspiracy doctrine did not apply to the plaintiff's § 1983 conspiracy claim because the plaintiff "alleged the deprivation of numerous civil rights, and that cannot be the goal of the City or its police department").

Moreover, in order to obtain the protection of qualified immunity, an official must not violate a clearly established right.  The Court agrees with others in this district that have articulated that the relevant right is the underlying constitutional right, *not* "the availability of a defense to conspiracy liability."  *Liggins*, 2021 WL 2894167, at *6 ("The Court believes what must be clearly established is limited to the underlying constitutional right that the Defendants conspired to violate."); *Walker v. White*, No. 16 CV 7024, 2021 WL 1058096, at *16 n.16 (N.D. Ill. Mar. 19, 2021) ("[T]he § 1983 conspiracy is not unlawful, the constitutional tort is the unlawful act.  So long as it is properly understood that conspiratorial responsibility is simply a method of proof for an officer's personal involvement in a constitutional tort under § 1983 and so long as the underlying constitutional right is clearly established, qualified immunity does not apply.").  The Troopers "have not argued that the constitutional rights actually at issue . . . were not clearly established for purposes of qualified immunity." *Liggins*, 2021 WL 2894167, at *6.

The Court therefore rejects the Troopers' qualified immunity defense at this stage, allowing Jordan's conspiracy claim to proceed.

## IV. State Law Claims (Counts IV and V)

In addition to his claims under 42 U.S.C. § 1983, Jordan brings claims under Illinois state law alleging IIED and malicious prosecution. The Troopers do not challenge the sufficiency of Jordan's state law claims. Instead, they argue that sovereign immunity bars the claims.

Under the Illinois State Lawsuit Immunity Act, 745 Ill. Comp. Stat. 5/1, the State of Illinois is generally immune from suit in any court except the Illinois Court of Claims. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). Jordan's state law claims against the Troopers are considered claims against the State and must be dismissed if "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State." *Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016) (quoting *Healy v. Vaupel*, 133 Ill. 2d 295, 309 (1990)), *aff'd*, 138 S. Ct. 784 (2018). But "[i]f the plaintiff alleges that state officials or employees violated statutory or constitutional law, sovereign immunity affords no protection." *Id.* at 658–59 (citation omitted) (internal quotation marks omitted).

Here, Jordan's state law claims are based on constitutional and statutory violations. He alleges that the Troopers violated his Fourth Amendment rights when they unlawfully seized and falsely arrested him and that they violated state law by, among other things, fabricating police reports, misleading prosecutors, and falsely charging him. These actions ground Jordan's malicious prosecution claim, *see, e.g.*, Doc. 1 ¶ 50 ("Defendant[]s . . . arrested Plaintiff without probable cause, fabricated police reports, misled prosecutors and placed false charges upon

Plaintiff"), and can be reasonably understood to ground his IIED claim as well.[4] The Troopers' authority as state troopers does not extend to these unlawful acts. *See Peirick v. Dudek*, No. 20 CV 3013, 2020 WL 6682891, at *2 (N.D. Ill. Nov. 12, 2020) ("[Defendant's] authority as a state trooper did not extend to the unlawful act of falsifying evidence and testimony to maintain a prosecution that lacked probable cause."). Therefore, at least at this stage, sovereign immunity does not bar Jordan's state law claims against the Troopers. *Mitchell v. Vill. of Matteson*, No. 20 CV 990, 2020 WL 3035965, at *5 (N.D. Ill. June 5, 2020) (refusing to dismiss state law claims based on constitutional violations); *Peirick*, 2020 WL 6682891, at *2 (allowing plaintiff to proceed on his malicious prosecution claim where he alleged that defendant fabricated evidence, police reports, and testimony); *Serio v. Rauner*, No. 15 C 6262, 2018 WL 4409389, at *5 (N.D. Ill. Sept. 17, 2018) (allowing plaintiff to proceed on IIED claim where the same conduct gave rise to IIED claim and alleged constitutional violation).

But this does not end the Court's consideration of the issue because, in their reply, the Troopers contend that the exception allowing suits to proceed where the defendant allegedly violated statutory or constitutional law only allows a plaintiff to seek injunctive relief. The Troopers characterize this as the "officer suit exception," and assert that even if the Troopers acted "erroneously," Jordan cannot seek damages because the officer suit exception does not cover claims for damages based on past wrongs. Doc. 18 at 7 (citing *Parmar v. Madigan*, 2018 IL 122265, ¶ 26 ("[A] complaint seeking damages for a past wrong does not fall within the officer suit exception to sovereign immunity.")).

---

[4] Though Jordan does not specify which conduct underlies his IIED claim, he incorporates all of his complaint's factual allegations—which include allegations of constitutional violations, false testimony, and misleading prosecutors—into his IIED claim. Doc. 1 ¶ 43.

Courts in this district have addressed *Parmar* and variations of the Troopers' argument in different ways. *See T.S. v. Cnty. of Cook*, 568 F. Supp. 3d 940, 942 (N.D. Ill. 2021) (comparing cases interpreting *Parmar*); *Bernard v. Baldwin*, No. 20-CV-5368, 2022 WL 847628, at *10 (N.D. Ill. Mar. 22, 2022) (same). *Compare Peirick*, 2020 WL 6682891, at *3 (rejecting defendant's invocation of *Parmar* because sovereign immunity, and therefore the officer suit exception, did not apply because plaintiff's claims were not against the state; "the duty not to make false accusations of criminal conduct is a general duty imposed on the public as a whole"), *and Mitchell v. Dumais*, No. 20 CV 990, 2021 WL 860359, at *3 (N.D. Ill. Mar. 8, 2021) ("*Parmar* doesn't change the sovereign immunity test."), *with Marshall v. Fries*, No. 19 C 55, 2019 WL 4062549, at *6 (N.D. Ill. Aug. 28, 2019) ("[Officer suit] exception applies where a plaintiff seeks to prospectively enjoin unlawful conduct, and not where plaintiff only seeks damages for a past wrong[.]"). In light of these conflicting interpretations, a court in this district certified for interlocutory appeal the question of "whether, under Illinois law, the officer suit exception to sovereign immunity applies only if a plaintiff seeks to enjoin a continuing violation of statutory or constitutional law." *T.S.*, 568 F. Supp. 3d at 942.

Given this uncertainty and the potential for clarification from the Seventh Circuit, the Court declines to dismiss Jordan's state law claims on immunity grounds.[5] *See Bernard*, 2022 WL 847628, at *10 (citing *Bentz v. Ghosh*, 718 F. App'x. 413, 419 (7th Cir. 2017) (state sovereign immunity does "not apply to state-law claims against state officials who allegedly violate statutory or constitutional law")); *Murphy*, 844 F.3d at 658 n.2 (noting that the "Illinois exception for illegal acts by state officials" has "broader effects" than the federal rule because it "allows suits for damages against state employees in their individual capacities")).

---

[5] Discovery on all of Jordan's claims should be coextensive; therefore, allowing his state law claims to proceed should not impose an additional burden, even if *Parmar* precludes these claims.

## CONCLUSION

For the foregoing reasons, the Court denies the Troopers' motion to dismiss [10].

Dated: October 24, 2022

_____
SARA L. ELLIS
United States District Judge